Tara THOMANN, Appellant,

v.

Seth FOUSE, Appellee.

No. S–10865.

Supreme Court of Alaska.

July 2, 2004.

Ward Merdes, Merdes & Merdes, P.C., Fairbanks, for Appellant.

Laura L. Farley and Stacy K. Steinberg, LeGros, Buchanan & Paul, Anchorage, for Appellee.

Before: BRYNER, Chief Justice, MATTHEWS, EASTAUGH, FABE, and CARPENETI, Justices.

## OPINION

BRYNER, Chief Justice.

## I. INTRODUCTION

Tara Thomann sued Seth Fouse for personal injuries arising from a car accident. Fouse unsuccessfully offered to settle the claim for $25,000 plus "medical payments assumed by [Fouse's] insurance carrier for resolution in a subsequent arbitration." A jury later returned a verdict resulting in an award that the superior court found to be lower than the pretrial offer. The court thus entered a judgment awarding post-offer costs and attorney's fees to Fouse under Civil Rule 68. Because Fouse acknowledged below that the agreement for future arbitration raised a "murky" issue as to the status of Thomann's medical bills, we reverse the award of post-offer costs and fees, holding that the offer of judgment was too indefinite to support an award under Rule 68.

## II. FACTS AND PROCEEDINGS

Seth Fouse caused an auto collision that injured Tara Thomann, a passenger in the other car. Thomann sued Fouse for money damages. Fouse acknowledged liability, and a jury trial on damages was scheduled to start before Superior Court Judge Charles R. Pengilly on September 16, 2002. Meanwhile Thomann's insurer, GEICO, had paid the medical bills she incurred after the accident.

About six weeks before trial, Fouse sent Thomann the following offer of judgment:

NOTICE IS HEREBY GIVEN that Defendant, Seth Fouse, in accordance with Alaska Rule of Civil Procedure 68, herein offers to allow judgment to be taken against him in the sum of TWENTY FIVE THOUSAND DOLLARS ($25,000), exclusive of awardable Rule 79 costs, prejudgment interest at the statutory rate, and Rule 82 attorneys' fees. This offer represents new money and is offered in addition to the medical payments which have been assumed by Defendant Fouse's insurance carrier *for resolution in a subsequent arbitration.* This offer is not to be construed as an admission of liability.[1]

Documents later filed in superior court by Fouse revealed that State Farm had agreed to a binding arbitration with GEICO concerning "the allocation of [Thomann's] medical expenses" and that State Farm had promised "to pay any amount ordered paid by the arbitrator." An arbitration had been set for January 10, 2003—about four months after the scheduled trial. Thomann was not a party to the arbitration, and the record provides no indication that she knew of it before receiving Fouse's offer of judgment. Fouse's superior court pleadings did not include a copy of State Farm's arbitration agreement with GEICO, and the record provides no evidence of its terms more definitive than the description given above.

Thomann did not accept Fouse's settlement offer of judgment, and the case proceeded to trial. The jury awarded Thomann $29,018.88, a total that included the entire amount Thomann claimed at trial for medical expenses, $9,418.88.

Thomann moved for an award of attorney's fees, asserting that she had prevailed in the action. Fouse opposed her motion and moved for fees himself, arguing that he was the prevailing party under Civil Rule 68 because his offer of judgment surpassed Thomann's verdict. In opposition to Fouse's position, Thomann argued that Fouse's pretrial offer lacked specificity and was too vague to be enforced; alternatively, she argued, her verdict exceeded the pretrial offer. The superior court determined Fouse to be the

---

1. Emphasis added.

prevailing party under Rule 68, and entered a judgment awarding post-offer costs and attorney's fees in his favor.

Thomann appeals the award of Rule 68 fees.

## III. DISCUSSION

On appeal Thomann renews the arguments she advanced below, contending that the pretrial offer of judgment was too indefinite to be enforced and that she prevailed in any event because the jury's verdict bettered Fouse's offer. We consider only the first of these issues—whether Fouse's pretrial offer was sufficiently definite to be enforceable under Civil Rule 68—since it is dispositive.

■■■ An offer of judgment's compliance with Rule 68 is a question of law, which we review independently.[2] When a party declines an offer of judgment and then fares worse at trial than under the offer, Rule 68 allows the offering party to claim post-offer costs and attorney's fees.[3] But to support an award of costs and fees under that rule, the pretrial offer must comport with the rule's requirements.[4] In deciding whether an offer meets the requirements of Rule 68, we must view the offer's terms as a reasonable offeree

would have understood them at the time the offer was made.[5]

■■■ "One of the protections afforded by the Civil Rule 68 procedure is that the offer of judgment must be definite. This protection is designed to avoid post-trial litigation concerning the meaning of the offer."[6] In keeping with this purpose, we have recognized that, to comply with Rule 68, an offer of judgment "must specify a definite sum and must be unconditional."[7] Because this requirement basically concerns "the specificity of the offer rather than its communication of a monetary amount," however, we have recognized that nonmonetary provisions in an offer of judgment can also be valid, "so long as they are unambiguous and unconditional."[8] Accordingly, we have enforced offers containing nonmonetary references to an insurer's lien for medical payments when the amount of the payments was undisputed and the meaning of the reference was otherwise unconditional and unambiguous.[9]

■■■ In the present case, the contested part of the offer of judgment is its provision specifying that Fouse's offer to pay Thomann $25,000 was "in addition to the medical pay-

---

2. *Jaso v. McCarthy,* 923 P.2d 795, 801 (Alaska 1996).

3. Alaska Civil Rule 68 (2002), which applies to cases filed after 1997, provides in relevant part:
   (a) At any time more than 10 days before the trial begins, either the party making a claim or the party defending against a claim may serve upon the adverse party an offer to allow judgment to be entered in complete satisfaction of the claim for the money or property or to the effect specified in the offer, with costs then accrued....
   (b) If the judgment finally rendered by the court is at least 5 percent less favorable to the offeree than the offer, or, if there are multiple defendants, at least 10 percent less favorable to the offeree than the offer, the offeree, whether the party making the claim or defending against the claim, shall pay all costs as allowed under the Civil Rules and shall pay reasonable actual attorney fees incurred by the offeror from the date the offer was made as follows:
   ....
   (3) if the offer was served 90 days or less but more than 10 days before the trial began, the offeree shall pay 30 percent of the offeror's reasonable actual attorney fees.

4. *Grow v. Ruggles,* 860 P.2d 1225, 1227 (Alaska 1993) (finding trial court assessing costs and

attorney's fees under Rule 68 may not consider offers that fail to comply with this rule) (citing *Myers v. Snow White Cleaners & Linen Supply, Inc.,* 770 P.2d 750, 753 (Alaska 1989)).

5. *Bayly, Martin & Fay, Inc., of Alaska v. Arctic Auto Rental, Inc.,* 517 P.2d 1406, 1407 (Alaska 1974); *cf. Hayes v. Xerox Corp.,* 718 P.2d 929, 937 (Alaska 1986) ("In order to give legal effect to the parties' reasonable expectations, the court examines the written agreement itself and also extrinsic evidence regarding the parties' intent at the time the contract was made.").

6. *Myers,* 770 P.2d at 752–53 (citation omitted).

7. *Davis v. Chism,* 513 P.2d 475, 481 (Alaska 1973); *accord Cook Schuhmann & Groseclose, Inc. v. Brown & Root, Inc.,* —— P.3d ——, ——, Op. No. 5817 at 11, 2004 WL 1368286 (Alaska, June 18, 2004); *Farr v. Stepp,* 788 P.2d 35, 37 (Alaska 1990).

8. *Cook Schuhmann & Groseclose,* —— P.3d ——, Op. No. 5817 at 11.

9. *See, e.g., Jaso,* 923 P.2d at 801–02; *Grow,* 860 P.2d at 1227–28.

ments which have been assumed by Defendant Fouse's insurance carrier for resolution in a subsequent arbitration."

■ Fouse characterizes this language as an unambiguous and unconditional commitment by State Farm to extinguish GEICO's lien for medical payments: "Fouse simply acknowledged the lien and stated he would pay the lien,[10] whatever the amount. This is a valid offer of judgment." According to Fouse, then, "[t]he resolution of the arbitration between Fouse's insurer and Geico is not relevant."

But Thomann disputes this characterization, arguing that the offer's express dependence on a future arbitration in which GEICO and "State Farm agreed to a fight" over the amount of Thomann's medical payments undermined her ability to assess the offer's true value. Thus, Thomann insists, the offer is "too indefinite in failing to define what it offers beyond $25,000—and requiring additional litigation to liquidate that amount."

In our view, Thomann's position has merit. On its face, the August 2 offer of judgment does not unambiguously say that State Farm made an unconditional commitment to satisfy GEICO's subrogated claim through arbitration. At most it hints that this might be the case while literally conditioning State Farm's duty to reimburse Thomann's medical payments on a "resolution in a subsequent arbitration" that the offer leaves undescribed. Nothing in the record indicates that Thomann had independent knowledge of the arbitration agreement when she received Fouse's offer, or that she had any definitive way to ascertain how the "subsequent arbitration" might affect her medical damages claim.

Fouse insists that the pending arbitration was irrelevant to Thomann's claim and sug-

gests that she should have known this to be the case. Yet we do not think it fair to expect Thomann to gamble on this assumption. Since the offer of judgment's manifest purpose was to propose clear terms for a settlement of Thomann's claims, upon receiving the offer, Thomann had no reason to expect that its express reference to the outcome of a "subsequent arbitration" had nothing to do with those claims—particularly because Fouse could easily have omitted the reference if in fact he regarded it as an irrelevant detail and meant only to offer a straightforward payoff of the medical claim. At best, then, even if Fouse meant it to be irrelevant, the presence of this detail invited confusion and could reasonably have led Thomann to wonder what effect the "subsequent arbitration" might have on her medical claim.

Indeed, the record confirms that State Farm's agreement to arbitrate on the issue of damages triggered general confusion over the status of Thomann's medical claims. On August 9, 2002, a week after sending Thomann the offer of judgment, Fouse filed a motion in limine, seeking to admit evidence at trial of State Farm's agreement to arbitrate on medical damages. Fouse's motion asserted that this evidence proved that "Defendant has agreed to pay all of Plaintiff's medical, hospital, or similar expenses incurred as a result of the vehicle accident." In a memorandum accompanying his motion, Fouse asserted that "[t]he fact arbitration has not yet occurred and Defendant has not been apportioned his share of Plaintiff's medical expenses is not relevant to any issue to be decided by the jury." To support his assertion, Fouse attached an affidavit signed by a State Farm claims representative, attesting that "State Farm and GEICO have agreed to binding arbitration with regard to the allocation of Plaintiff's medical expenses.

---

10. GEICO's "lien" is in reality a claim that was assigned by law to GEICO in the amount of the medical expenses that it paid on behalf of Thomann. We have explained such claims as follows:

When an insurer pays expenses on behalf of an insured it is subrogated to the insured's claim. The insurer effectively receives an assignment of its expenditure by operation of law and contract. If the insurer does not object, the insured may include the subrogated claim

in its claim against a third-party tortfeasor. Any proceeds recovered must be paid to the insurer, less pro rata costs and fees incurred by the insured in prosecuting and collecting the claim. But the subrogated claim belongs to the insurer. The insurer may pursue a direct action against the tortfeasor, discount and settle its claim, or determine that the claim should not be pursued.

*Ruggles v. Grow*, 984 P.2d 509, 512 (Alaska 1999) (citation omitted).

State Farm has promised to pay any amount ordered paid by the arbitrator."

Thomann opposed this motion on August 20, contesting Fouse's characterization of the agreement and disputing the existence of any meaningful settlement of the medical damages claim: "First, State Farm hasn't paid a dime of [Thomann's] medical bills. They haven't 'promised to pay plaintiff's medical expenses.' ... Rather, State Farm is fighting with GEICO over it[s] obligation to pay this debt as well." Thomann also asserted that GEICO had never requested her not to seek reimbursement for its medical payments. "Furthermore," Thomann claimed, "if GEICO were to make such a request at this late date, it would be unfair to Thomann because she has already turned down an offer of judgment from Fouse/State Farm, based in part upon her belief that she must repay GEICO from the proposed amount."

On August 26, 2002, Fouse replied to Thomann's opposition by formally withdrawing his motion to allow evidence of the medical claim's payment. Fouse's withdrawal expressly conceded that "[t]he issue of who has paid or who has promised to pay Plaintiff's medical bills reasonably related to the car accident at issue is murky enough that a compromise is necessary."

At oral argument before this court, Fouse's counsel suggested that the withdrawal of Fouse's motion to admit evidence was prompted by a separate argument advanced in Thomann's opposition to the motion—Thomann's argument that this evidence was barred by the collateral source provisions of AS 09.17.070. Yet Fouse's concession of murkiness was not limited to the question of admissibility under the statute, but rather explicitly extended to the more general issue of who had paid or promised to pay Thomann's medical bills "reasonably related to the car accident." Given Fouse's express concession that the question of who had "promised to pay [Thomann's] medical bills reasonably related to the car accident" remained "murky" on August 26, we see no basis to conclude that three weeks earlier, when Fouse sent his August 2 settlement offer, Thomann should reasonably have understood it as embodying an unambiguous and unconditional commitment by State Farm to settle her entire medical claim.

## IV. CONCLUSION

Because Fouse's offer of judgment was indefinite in its proposed disposition of Thomann's medical claims, we hold that it failed to meet the requirements of Rule 68 and could not support an award of costs and attorney's fees in favor of Fouse.[11] We thus REVERSE and REMAND for entry of judgment without regard to the offer.

---

11. Cf. Grow, 860 P.2d at 1227.